UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF MISSISSIPPI

GREENVILLE DIVISION

| | | |
|---|---|---|
| SHERMAN H. ZENG, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 4:13-CV-00040-SA-JMV |
| Plaintiff, | : : : | **MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT** |
| vs. | : : | |
| HUGH S. POTTS, JR., JEFFREY B. LACEY, MICHAEL L. NELSON, SCOTT M. WIGGERS, EDDIE J. BRIGGS, HOLLIS C. CHEEK, JON A. CROCKER, JAMES D. FRERER, K. MICHAEL HEIDELBERG, JOHN CLARK LOVE, III, OTHO E. PETTIT, JR., SAMUEL B. POTTS, JULIE B. TAYLOR, LAWRENCE D. TERRELL, LAWRENCE D. "DENNY" TERRELL, JR., JAMES I. TIMS, RENASANT CORPORATION, RENASANT BANK, FIRST M&F CORPORATION, and MERCHANTS AND FARMERS BANK, | : : : : : : : : : : : : : : | |
| Defendants, | : : : | |

**TABLE OF CONTENTS**

                                                                        **Page**

I.     BACKGROUND OF THE LITIGATION ............................................................................1

        A.     The Initial Stages .............................................................................................1

        B.     The Settlement Discussions ............................................................................3

        C.     The Fairness of the Settlement .......................................................................4

II.    LEGAL STANDARDS ...........................................................................................6

        A.     Preliminary Approval of the Settlement ........................................................6

               1.     The Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations, Has No Obvious Deficiencies, Does not Improperly Grant Preferential Treatment to Plaintiffs or other Individual Members of the Class, and Falls Within the Range of Possible Judicial Approval .................................................................7

        B.     Class Certification ...........................................................................................8

               1.     Rule 23(a)(1) – Numerosity ...............................................................8

               2.     Rule 23(a)(2) – Commonality ............................................................9

               3.     Rule 23(a)(3) – Typicality ................................................................10

               4.     Rule 23(a)(4) – Adequacy .................................................................11

               5.     Rule 23(b)(1) and (2) ........................................................................12

        C.     The Proposed Notice Is Proper .....................................................................13

III.   CONCLUSION ......................................................................................................14

# TABLE OF AUTHORITIES

Page

**CASES**

*Bryant v. Avado Brands, Inc.*,
 187 F.3d 1271 (11th Cir. 1999) ..................................................................................8

*Carson v. Am. Brands, Inc.*,
 450 U.S. 79 (1981)......................................................................................................6

*In re Catfish Antitrust Litig.*,
 826 F. Supp. 1019 (N.D. Miss. 1993).....................................................................9, 10

*In re Celera Corp. S'holder Litig.*,
 59 A.3d 418 (Del. 2012) ...................................................................................9, 12, 13

*In re Enron Corp. Sec. Litig.*,
 529 F. Supp. 2d 644 (S.D. Tex. 2006) .......................................................................12

*In re GeoEye, Inc. S'holder Litig.*,
 No. 1:12-cv-00826-CMH/TCB (E.D. Va.) ................................................................14

*In re Lawson Software, Inc. S'holder Litig.*,
 No. Civ. A. 6443-VCN, 2011 WL 2185613 (Del. Ch. May 24, 2011)..........9, 10, 11

*In re Netsmart Techs., Inc. S'holders Litig.*,
 924 A.2d 171 (Del. Ch. 2007)................................................................................7, 8

*In re Shell Oil Refinery*,
 155 F.R.D. 552 (E.D. La. 1993)..................................................................................6

*In re Talley Indus., Inc. S'holders Litig.*,
 No. Civ.A. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998) ...............................11

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
 11 A.3d 1175, 1176-78 (Del. Ch. 2010) ....................................................................7

*Walton v. Franklin Collection Agency, Inc.*,
 190 F.R.D. 404 (N.D. Miss. 2000).................................................................10, 11, 12

*Zeidman v. J. Ray McDermott & Co., Inc.*,
 651 F.2d 1030 (5th Cir. 1981) ....................................................................................9

**Page**

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P.
   Rule 23 ................................................................................................................... *passim*

Del. Ch. Ct. R.
   Rule 23(b)(1) ................................................................................................................. 13
   Rule 23(b)(2) ................................................................................................................. 13

Pursuant to Rule 23, Plaintiffs Sherman H. Zeng and Stanley J. Silverii ("Plaintiffs"), without objection by Defendants, seek preliminary approval of the class action settlement signed by the parties ("Settlement"), as set forth in the Stipulation of Settlement executed on October 3, 2013 ("Stipulation"), attached to the Declaration of Cullin Avram O'Brien ("O'Brien Decl.") as **Exhibit** "**A**." Specifically, Plaintiffs seek an order from the Court, substantially in the form of the preliminary approval order attached to the O'Brien Decl. as **Exhibit** "**B**", that: (i) preliminarily approves of the Settlement, (ii) preliminarily certifies the Settlement Class defined herein; (iii) approves of the parties' proposed class notice; and (iv) sets a final approval hearing date at least 60 days after dissemination of the notice at the convenience of the Court. Accordingly, Plaintiffs state as follows:

**I.     BACKGROUND OF THE LITIGATION**

**A.     The Initial Stages**

Currently pending before the Court is a putative class action styled *Zeng v. Potts, et al.*, No. 4:13-CV-40-MPM-JMV (the "*Zeng* Action"). A putative derivative lawsuit was also filed in Attalla County styled *Silverii v. Potts, et al.*, No. 13-0049 (Miss. Cir. Ct. 5th Jud. Dist. Attala Cnty.) (the "*Silverii* action") (together, the "Actions").

The Actions challenged the merger of First M&F Corporation ("FMFC") and Merchants and Farmers Bank into Renasant Corporation and Renasant Bank through a merger agreement dated February 6, 2013, whereby FMFC shareholders received 0.6425 shares of Renasant Corporation stock for each share of FMFC stock they owned (the "Merger"). The Actions name as defendants: Hugh S. Potts, Jr., Eddie J. Briggs, K. Michael Heidelberg, Jeffrey B. Lacey, John Clark Love, III, Lawrence D. Terrell, James I. Tims, Samuel B. Potts, Scott M. Wiggers, Hollis C. Cheek, Jon A. Crocker, James D. Frerer, Otho E. Pettit, Jr., Julie B. Taylor, Lawrence D.

1

Terrell, Jr., Michael L. Nelson, Renasant Corporation, Renasant Bank, Merchants and Farmers Bank, and FMFC (collectively, the "Defendants").

The Merger was publically announced on February 7, 2013 in a press release and Form 8-K filed with the Securities and Exchange Commission ("SEC"). On June 25, 2013, shareholders of FMFC and Renasant Corporation approved the Merger Agreement, and the Merger was consummated on September 1, 2013 at 12:01 a.m.

Sherman H. Zeng and Stanley J. Silverii (collectively, "Plaintiffs," and together with Defendants, the "Parties") were appointed as Lead Plaintiffs in the Zeng Action. In addition, Robbins Geller Rudman & Dowd LLP was appointed as Lead Counsel and Pigott & Johnson, P.A. was appointed as Liaison Counsel in the Zeng Action (collectively, along with Levi & Korsinsky, LLP and the Pratt Law Firm, PLLC, constituting "Plaintiffs' Counsel").

Plaintiffs separately conducted investigations of Defendants' actions in connection with the Merger, including a thorough review and analysis of all relevant U.S. Securities and Exchange Commission ("SEC") filings, press releases, analyst reports about the Merger, and other publicly available information, and separately retained independent financial consultants in connection with their respective investigations. Plaintiffs vigorously litigated their respective actions on behalf of the FMFC shareholders, including by, *inter alia*, filing a contested motion to expedite and preparing a motion for preliminary injunction to be filed in the *Silverii* action, filing a motion for preliminary injunction in this Action, thoroughly reviewing 2,340 pages of documents produced by Defendants with the assistance of a financial expert, and taking the deposition of FMFC Chief Executive Officer ("CEO"), defendant Hugh S. Potts, Jr. ("Potts"), demanding that Defendants disclose all material information to shareholders, conducting

2

extensive negotiations concerning the adequacy of Defendants disclosures, and engaging in numerous arms-length settlement negotiations with Defendants.

### B. The Settlement Discussions

Counsel for Defendants and Plaintiffs engaged in extensive arm's-length negotiations concerning a settlement of the Actions beginning on or about May 21, 2013.

On June 5, 2013, counsel for all parties to the Actions reached an agreement regarding settlement of the Actions and entered into a Memorandum of Understanding (the "MOU"). The MOU provides for the settlement of the Actions between and among Plaintiffs—on behalf of themselves and the putative Class (defined below) and derivatively on behalf of FMFC—and Defendants, on the terms and subject to the conditions set forth in the MOU and the Stipulation, which is intended to be a full and final resolution of the Settled Claims.

The Settlement provided substantial benefits to the putative class of FMFC shareholders by ensuring that FMFC shareholders would be provided with full and fair information about the sales process and the Company's intrinsic value prior to the June 25, 2013 FMFC shareholder vote on the Merger. As a result of the Settlement, on June 11, 2013, Defendants filed a Form 8-K (attached as Exhibit A to the Stipulation of Settlement) that publicly disclosed, for the first time, material information concerning the Merger, including, *inter alia*: (1) material financial projection information; (2) material aspects of the process that led to the Merger; and, (3) material aspects of the financial analyses upon which Defendants based their determination that the Merger consideration was fair to FMFC's shareholders. But for Plaintiffs' litigation efforts, this material information would not have been available to FMFC shareholders prior to the shareholder vote.

In accordance with the terms of the MOU, on June 6, 2013, Plaintiffs in the *Zeng* Action filed an Agreed Withdrawal of Plaintiff's Pending Motion for a Preliminary Injunction and

Motion to Cancel Corresponding June 14, 2013 Hearing. On June 7, 2013, the parties in the *Silverii* action filed, and the State Court entered, an Agreed Order of Dismissal With Prejudice, thereby dismissing the *Silverii* action with prejudice. On June 12, 2013, the Court dismissed the motion for a preliminary injunction as moot and canceled the hearing on that motion.

On June 25, 2013, the respective shareholders of FMFC and Renasant Corporation approved the Merger Agreement, and the Merger was consummated on September 1, 2013.

On June 28, 2013, this Court appointed Plaintiffs Sherman H. Zeng and Stanley J. Silverii as Co-Lead Plaintiffs in the *Zeng* Action. In addition, this Court appointed Robbins Geller Rudman & Dowd LLP as Lead Counsel and Pigott & Johnson, P.A. as Liaison Counsel in the *Zeng* Action (collectively, along with Levi & Korsinsky, LLP and the Pratt Law Firm, PLLC, constituting "Plaintiffs' Counsel").

  **C. The Fairness of the Settlement**

The Settlement was not achieved until Plaintiffs' counsel had expended a substantial effort over a short period of time researching and preparing pleadings and demand letters, pursuing discovery, reviewing documents, determining the adequacy of disclosures and conducting extensive disclosure and settlement negotiations under extremely time-sensitive circumstances. As such, the Settlement was reached at a time when Plaintiffs and Plaintiffs' Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Actions, and was achieved only after extended arm's length negotiations. In reaching the Settlement, Plaintiffs and their Counsel weighed the benefits obtained against the likelihood of obtaining better results if the litigation continued, and determined that under the circumstances of this litigation, the Settlement is fair, reasonable and adequate. The Settlement falls within the parameters of settlements in similar actions and is justified in light of the substantial benefits conferred upon the Settlement Class. Defendants have acknowledged that the prosecution of the

4

Actions resulted in Defendants making the supplemental disclosures to the Company's public shareholders.

Further, as part of the Settlement, Defendants agreed to provide Plaintiffs' Counsel with additional discovery in the form of a deposition of a KBW representative knowledgeable about the Merger to enable Plaintiffs to confirm the reasonableness of the settlement terms. On August 2, 2013, pursuant to the terms of the MOU, Plaintiffs deposed James Mabry, a Managing Director at KBW who is knowledgeable about the Merger, including the process that led to the Merger and the analyses underlying KBW's fairness opinion. Subsequently, Plaintiffs and their counsel have concluded that the Settlement is fair, adequate, reasonable, and in the best interests of the putative Class of FMFC shareholders.

Defendants have expressly denied, and continue to deny, all allegations of wrongdoing, fault, liability, or damage to Plaintiffs, the Class, FMFC, or Merchants and Farmers Bank; deny that they breached any fiduciary duties or aided and abetted any such breaches, or engaged in any wrongdoing or violation of law; deny that they acted improperly in any way; and maintain that they have committed no disclosure violations or any other breach of duty whatsoever in connection with the Merger or any public disclosures. Defendants, to avoid the costs, disruption, and distraction of further litigation, and without admitting the validity of any allegations made in the Actions, or any liability with respect thereto, have concluded that it is desirable that the claims against them be settled and dismissed on the terms reflected in this Stipulation.

Plaintiffs' counsel have determined that Defendants have and would continue to assert significant factual and legal defenses to the claims in the Actions and that settlement of the Actions on the terms reflected in the MOU and the Stipulation is fair, reasonable, adequate, and in the best interests of Plaintiffs, the putative Class, and FMFC.

5

On October 3, 2013, the parties entered into the Stipulation of Settlement.

## II.　LEGAL STANDARDS

### A.　Preliminary Approval of the Settlement

Rule 23(e) provides that "a class may be settled, voluntarily dismissed, or compromised only with the court's approval." Here, the parties seek preliminary approval of the following Settlement Class:

> [A]ll FMFC common shareholders, including all persons or entities that were record holders or beneficial holders of FMFC common stock, from October 15, 2012 through September 1, 2013, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any and each of them. Excluded from the Class are Defendants, members of the immediate family of any Defendant, and any entity in which a Defendant has or had a controlling interest.

As part of preliminary approval, Plaintiffs seek an order disseminating class notice and notifying Class members of their opportunity to object to the proposed Settlement and to attend a final approval hearing. To determine whether there is sufficient cause to grant such preliminary approval,

> the court must determine that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval.

*In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (internal citations and quotations omitted). For that reason, here, the Court need "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981).

This Settlement meets these standards and, thus, should be preliminarily approved.

> 1. **The Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations, Has No Obvious Deficiencies, Does not Improperly Grant Preferential Treatment to Plaintiffs or other Individual Members of the Class, and Falls Within the Range of Possible Judicial Approval**

The Settlement was achieved after significant litigation prior to consummation of the merger. Plaintiffs sought to enjoin the (then) proposed merger of FMFC with Renasant, including the FMFC shareholder vote, unless and until Defendants provided additional disclosures to FMFC shareholders. To that end, the parties negotiated for and then engaged in expedited discovery in anticipation of the preliminary injunction hearing.

Only after vigorously negotiating their respective positions, well aware of the strengths and weaknesses of the claims, did the parties enter into the Settlement. The parties' respective counsel are experienced in corporate takeover litigation, and conducted discovery to confirm the fairness of the Settlement. As evidenced by the expedited discovery and the briefing on Plaintiffs' motion for a preliminary injunction, these negotiations were serious, informed and non-collusive.

The Settlement is not deficient and falls within the range of possible judicial approval. The Settlement mooted Plaintiffs' request for injunctive relief, requiring Defendants to provide the disclosures Plaintiffs requested including, *inter alia*: (1) material financial projection information; (2) material aspects of the process that led to the Merger; and, (3) material aspects of the financial analyses upon which Defendants based their determination that the Merger consideration was fair to FMFC's shareholders. These types of disclosures have been held to be material in similar corporate takeover litigation, and Plaintiffs believe that without the disclosures having been made here, the FMFC shareholder vote on the Merger should have been enjoined. *See*, *e.g.*, *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203-4 (Del. Ch. 2007) (enjoining transaction because of lack of disclosure regarding financial projections); *Maric*

*Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1176-78 (Del. Ch. 2010) (enjoining transaction because of lack of disclosure regarding analysis contained in fairness opinion); *Netsmart*, 924 A.2d at 204 (enjoining transaction because of lack of disclosure regarding process leading to the merger).

By definition, because Defendants provided this disclosure relief to all of FMFC's shareholders through a public filing with the SEC, no class member was given preferential treatment.

### B. Class Certification

Rule 23 permits class certification where the movant meets the four elements of Rule 23(a) and one of the three requirements of Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(1) and (2). As demonstrated below, Plaintiffs meet these elements and requirements.

#### 1. Rule 23(a)(1) – Numerosity

Rule 23(a)(1) allows for class certification where a proposed class is "so numerous that joinder of all members is impracticable." Here, according to the Company's August 14, 2013 Form 10-Q filed with the SEC, there were over 9 million shares of FMFC common stock outstanding as of July 31, 2013.[1] The Court can take judicial notice of this fact. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999). Given this record evidence, it is likely that the number of class members is in the thousands, easily satisfying the numerosity requirement. For instance, the Fifth Circuit has stated:

---

[1] http://www.sec.gov/Archives/edgar/data/320387/000032038713000034/fmfc-2013630x10q.htm (last visited September 30, 2013).

> [T]he plaintiffs appear to have presumed that any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be "so numerous that joinder of all members is impracticable." This assumption is indeed a reasonable one, since it is difficult to imagine any such class composed of a small number of sellers, and since the class would in all likelihood be geographically dispersed and difficult to identify.

*Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981).

Likewise, in the *Lawson* corporate takeover case, the Delaware Chancery found the numerosity requirement was satisfied by "recognizing that the Company's common stock is owned by thousands of shareholders [and that, thus, j]oinder is impracticable." *In re Lawson Software, Inc. S'holder Litig.*, No. Civ. A. 6443-VCN, 2011 WL 2185613, at *2 (Del. Ch. May 24, 2011).

### 2. Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." In corporate takeover cases, the commonality requirement is axiomatic. The commonality requirement of Rule 23(a)(2) is satisfied if common questions overshadow other issues and, thus, if individual actions "would completely destroy any notions of judicial economy." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1033-1034 (N.D. Miss. 1993). Here, the common questions of law pertaining to Defendants alleged breaches of fiduciary duty form the basis of Plaintiffs' actions.

The commonality requirement is met here (as it is in other corporate takeover cases)[2] because Defendants' alleged conduct affected all members of the Class in the same manner,

---

[2] For instance, in *Lawson*, the court found that there was commonality because the alleged "breaches of fiduciary duty . . . implicate[d] the interests of all members of the proposed class of shareholders." 2011 WL 2185613, at *2. Likewise, in *In re Celera Corp. S'holder Litig.*, 59 A.3d 418 (Del. 2012), the Delaware Supreme Court found that courts "repeatedly have held that actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable."

9

creating the same legal issues. Thus, Plaintiffs' claim and the claim of the Class arise from the same course of conduct and attendant legal theories, satisfying "commonality." Individual actions would completely destroy any notions of judicial economy.

### 3. Rule 23(a)(3) – Typicality

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 409 (N.D. Miss. 2000). Moreover, "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Catfish Antitrust Litig.*, 826 F. Supp. at 1034-37.

That strong assumption of typicality exists here because the challenged conduct arising out of the proposed merger of FMFC with Renasant affects all members of the Class as FMFC shareholders. Thus, Plaintiffs satisfy the requirement of typicality because, just like all other Class members, they: (1) held shares of FMFC as of February 7, 2013; (2) are entitled to cast votes on the proposed merger; and (3) faced irreparable injury due to the conduct alleged in the operative complaint. Plaintiffs' claims and the claims of the Class arise out of the same actions regarding the proposed merger of FMFC with Renasant and are based on the same legal theories.

In corporate takeover cases like this one, classes of shareholders meet this typicality requirement, as explained by the *Lawson* court:

> [T]he claims brought by the Plaintiffs are typical of the claims that the class members would be expected to assert if they were participating in this litigation and the defenses that the Plaintiffs will encounter are the same as those that would confront members of the class as well. All claims grow out of the same events and courses of conduct and the same legal theories would apply. As one regularly

10

finds in challenges to the conduct of fiduciaries in the merger context, the typicality requirement is satisfied here.

2011 WL 2185613, at *2. *See also In re Talley Indus., Inc. S'holders Litig.*, No. Civ.A. 15961, 1998 WL 191939, at *9 (Del. Ch. Apr. 13, 1998) ("Because all Class members face the same injury flowing from the defendants' conduct in connection with the merger, the typicality requirement is satisfied.").

### 4. Rule 23(a)(4) – Adequacy

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." In determining this element of adequacy, this Court should conduct a two-part inquiry into: (1) "whether the [Plaintiffs'] interests are antagonistic to those of the class," and (2) "whether [Plaintiffs'] counsel has the qualifications and experience necessary to competently conduct the litigation." *Walton*, 190 F.R.D. at 410. Plaintiffs fully satisfy such inquiry into their adequacy here.

Plaintiffs satisfy the first part of the inquiry because their interests are aligned with the interests of the Class. As stated above, Plaintiffs' claims are based on the same challenged conduct arising out of the Merger, which conduct by the defendants affects all members of the Class as shareholders of FMFC in the exact same way as it affects Plaintiffs. By definition, Plaintiffs' interests are aligned with and are not antagonistic to those of the Class. Importantly, there is no evidence to the contrary. *See Walton*, 190 F.R.D. at 410 ("[T]he adequacy of the putative representatives and of Plaintiffs' counsel is presumed in the absence of specific proof to the contrary.").

Indeed, Plaintiffs have already taken significant steps in this Action which further underscore their adequacy as Class representatives. Plaintiffs have achieved the supplemental disclosures for FMFC's shareholders, as described above. Plaintiffs have been appointed as lead

11

plaintiffs by the Court. As a result of Plaintiffs' efforts, FMFC shareholders were able to cast informed, intelligent and rational votes on whether to vote or reject the Merger.

Plaintiffs also satisfy the second part of the adequacy inquiry because their counsel have "substantial experience as well as familiarity with the particular issues in the case sub judice." *Walton*, 190 F.R.D. at 411. Plaintiffs' Lead Counsel – Robbins Geller Rudman & Dowd LLP ("Robbins Geller") – is a firm with substantial experience in the prosecution of shareholder and securities class actions in this Circuit and elsewhere. For example, in *In re Enron Corp. Sec. Litig.*, 529 F. Supp. 2d 644 (S.D. Tex. 2006), Robbins Geller obtained over $7 billion for the shareholders, wherein the court noted that Robbins Geller "is comprised of probably the most prominent securities class action attorneys in the country." *Id*. at 675.

     **5.**    **Rule 23(b)(1) and (2)**

Rule 23(b)(1) and (2) defines two types of class actions, assuming the elements of Rule 23(a) are met, where:

> (1) prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Corporate takeover litigation is perfectly suited to meet the additional elements of Rule 23(b)(1) and (2). In *Celera*, the Delaware Supreme Court, stated that court "repeatedly have held that actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable under both subdivisions (b)(1) and (b)(2)." 59 A.3d at 432-33. Although

the *Celera* court was interpreting Delaware Chancery Rule 23(b)(1) and (2), it is substantively identical to Rule 23(b)(1) and (2).[3]

Here, Plaintiffs challenged Defendants' conduct in connection with the negotiation and entry into the Merger. Because (1) the prosecution of individual actions would be dispositive of interests of absent Settlement Class members; (2) Defendants' actions in connection with the Merger are and were generally applicable to all FMFC shareholders; and (3) the primary relief Plaintiffs sought in the Actions was injunctive, certification is proper under Rule 23(b)(1) and (b)(2). Indeed, when Defendants agreed to make the additional disclosures in advance of the FMFC shareholder vote on the Merger, those injunctive remedies flowed equally to all shareholders.

### C.     The Proposed Notice Is Proper

Rule 23(c)(2)(A) provides, in pertinent part: "For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." For a binding settlement, Rule 23(e) requires notice to be disseminated in a reasonable manner to all class members who would be bound. The proposed notice meets these standards. *See* **Exhibit** "**B-1**" attached to the O'Brien Decl.

---

[3] Delaware Chancery Court Rule 23(b)(1) and (2) provides, in pertinent part:

> (1) The prosecution of separate actions by or against individual members of the class would create a risk of: (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Under the terms of the Stipulation, Defendants are providing the Class with the proposed notice. The proposed notice is written in concise, plain and easily understood language, informing Class members of:

a) the terms of the settlement;

b) the nature of the action;

c) the definition of the class certified;

d) the class claims, issues or defenses;

e) the binding effect of a class judgment on members under Rule 23(b)(1) and (2);

f) the class member's opportunity to object; and

g) the fees and costs award being requested by Plaintiffs' counsel.

*See generally* **Exhibit B-1**.

The proposed notice tracks notices used and approved in similar other corporate takeover settlements. *See*, *e.g.*, **Exhibit "C"** (copy of notice from *In re GeoEye, Inc. S'holder Litig.*, No. 1:12-cv-00826-CMH/TCB (E.D. Va.)) attached to the O'Brien Decl. Accordingly, here, Plaintiffs ask that the proposed notice meet with the Court's approval.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move for preliminary approval of the Settlement, and for entry of an agreed scheduling order, which preliminarily certifies a settlement Class, approves of the proposed Notice, and sets a final Settlement Hearing at least 60 days after dissemination of the Notice at a date convenient to the Court. Plaintiffs attach a proposed order as **Exhibit B** to the O'Brien Decl.

| | |
|---|---|
| DATED: October 4, 2013 | *s/Cullin A. O'Brien* |
| | CULLIN A. O'BRIEN *(Pro Hac Vice)* |

ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

PIGOTT & JOHNSON, P.A.
BRAD PIGOTT, Mississippi Bar No. 4350
CLIFF JOHNSON
775 N. Congress Street
Jackson, Mississippi 39202
(601) 354-2121
(601) 354-7854 (fax)

Of Counsel:

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Counsel for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

the ECF system, which served a copy upon registered participants

This the 4th day of October, 2013.

*s/Cullin A. O'Brien*
CULLIN A. O'BRIEN *(Pro Hac Vice)*

ROBBINS GELLER RUDMAN & DOWD LLP
E-mail:cobrien@rgrdlaw.com

15